IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | NO. CR-F-10-150 OWW |
|---|---|---|
| | ) | |
| | ) | MEMORANDUM DECISION AND |
| | ) | ORDER VACATING NOTICE OF |
| Plaintiff, | ) | AUTOMATIC STAY (Doc. 14), |
| | ) | DENYING  EX PARTE MOTION FOR |
| vs. | ) | EXPEDITED WRIT OF ERROR |
| | ) | (Doc. 32) AND DIRECTING |
| | ) | CLERK OF COURT TO LODGE |
| BRETT ALLEN BOSSINGHAM and | ) | PLAINTIFFS' "COUNTERCLAIM |
| ELIZABETH ANN BOSSINGHAM, | ) | FOR TRESPASS" |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants Brett Allen Bossingham and Elizabeth Ann Bossingham, currently proceeding *in pro per*, have been charged by Indictment filed on April 15, 2010 with conspiracy to defraud the United States and a department or agency thereof, by willfully attempting to evade or defeat any income tax or payment thereof, due and payable to the Internal Revenue Service, in violation of 18 U.S.C. § 371 and 26 U.S.C. § 7201, and with six counts of attempting to evade and defeat the payment of tax and aiding and abetting in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7201.

1

Defendants were arrested pursuant to arrent warrants on October 29, 2010.  Defendants appeared before Magistrate Judge Beck for arraignment on October 29, 2010.  Arraignment was continued to November 15, 2010 in order that Defendants retain counsel.  Defendants appeared on November 15, 2010 before Magistrate Judge Austin for arraignment.  Arraignment was again continued to November 29, 2010 in order that Defendants retain counsel.  Defendants appeared on November 29, 2010 before Magistrate Judge Snyder for arraignment.  Defendants again requested a continuance in order to retain counsel.  Magistrate Judge Snyder continued the arraignment to December 20, 2010 and advised Defendants that arraignment will take place on December 20, 2010 whether or not Defendants have retained counsel.

On November 15, 2010, Defendants filed a "Notice of Automatic Stay."  The Clerk's Office docketed the pleading as "MOTION/Notice of Automatic Stay of Proceedings."  (Doc. 14).  On November 19, 2010, the United States filed an opposition to the Notice of Automatic Stay.  (Doc. 15).

On November 29, 2010, Defendants an ex parte "Motion for Expedited Writ of Error."  (Doc. 32).

Defendants' motion for expedited writ of error is a petition for writ of error coram nobis seeking to correct what Defendants characterize as errors in the docketing of pleadings filed by Defendants in this criminal action.  By Declaration, Defendants aver:

    2.  On November 12, 2010, the Counterclam was

> **given to the Deputy Clerk, who stamped it 'FILED.' Ultimately, the paper was re-marked as 'RECEIVED' by the clerk becausethere was a question as to whether or not the same case number should be used. The Deputy Clerk estimated that the question would likely be resolved in a couple of days. No fee was demanded at the time. Exhibit 3 is a true and correct copy of the conformed Counterclaim. On the conformed Counterclaim the original 'FILED' stamp shows through the re-marking label.**
>
> **3.  All counterdefendants were served, shortly after the filing of the counterclaim by means of a professional process server. See Proof of Service, Exhibit 4.**
>
> **4.  On November 15, 2010, a Notice of Automatic Stay of Proceedings (Exhibit 5) was filed with the Deputy Clerk of Court, and all parties were also served with a copy (see Proof of Service, Exhibit 6). (NOTE: the Notice was incorrectly posted to the Court Docket. The docket entry incorrectly shows is as a 'MOTION'.)**
>
> **5.  At the hearing on November 15, 2010, the court was apprised of the filing of the Counterclaim, Notice, and Proof of Service. The Judge of the criminal court declined to receive the conformed copies because he and the Counterclaimants, in good faith, thought the papers had been entered into the electronic system upon which all rely. It was not until November 22, 2010, that the Counterclaimants discovered that the Counterclaim had never been posted into the electronic system.**
>
> **6.  Counterclaimants believe that those two errors can be easily corrected by the court.**

Defendants' Counterclaim is captioned "Counterclaim for Trespass" and names the United States of America, Complainer Doe, Kilbur Mand, and Mike Coleman as Counterdefendants. The Counterclaim alleges in relevant part:

3

```
 1              3. ... COMPLAINER DOE, KILBUR MAND, and MIKE
                COLEMAN intimidated, lied, and deceived
 2              Counterclaimants and fraudulently caused
                hand-, foot-, and belly-cuffing, and
 3              incarceration of Counterclaimants. Against
                their will and under color of law.
 4              Counterclaimants continue to be subjected to
                the forcefully assumed jurisdiction, will,
 5              and constructive detention by the
                Conspirators.
 6
                4. Counterclaimants, on information and
 7              belief, allege that Conspirators lack
                jurisdiction to bring their action against
 8              Counterclaimants.  For that reason,
                Counterclaimants demand that Conspirators
 9              provide proof of standing and jurisdiction.
                Until jurisdiction is provent, all
10              proceedings in the original case must stop
                until the final adjudication of jurisdiction
11              which is the subject of this counterclaim.

12              5. Counterclaimants, on information and
                belief, allege that Conspirators
13              misrepresented to the GRAND JURY their
                authority, as well as the facts and the law
14              in this matter.

15              6. On October 27, 2010, Counterclaimants
                were contacted by phone by Conspirator KILBUR
16              MAND, who claimed that he was from the
                Department of Treasury, and that there is a
17              grand jury indictment and warrant for their
                arrest.  KILBUR MAND also ordered that they
18              must, without other option, appear on Friday,
                October 29, 2010, at the marshal's office for
19              processing, and if they did not do as
                instructed, he stated, 'it would not be
20              good.'  By his demeanor he implied that far
                more serious things would happen to the
21              couple if they did not do as he instructed.
                Later, a copy of a purported warrant was
22              faxed to Counterclaimants.  The purported
                warrant (Exhibit 1) was incomplete and was
23              not signed by a judge; it was dated April 15,
                2010, signed by a deputy clerk, and
24              'executed' over six months later.

25              7. On October 28, 2010 Counterclaimants
                contacted the Sheriff's department and the
26              Clerk of Court.  Neither had any record of
```

any warrant having been issued, nor was there any court docket showing counterclaimants as part of any action. Counterclaimants then contacted Conspirator KILBUR MAND who said that the reason why there was no record, was because the warrant was sealed. He also said that if Counterclaimants didn't show up at the marshals, they would be arrested and placed in the County Jail.

8.  On October 29, 2010, under duress and threat of arrest, Counterclaimants appeared at the designated location. Upon encountering Conspirators KILBUR MAND and MIKE COLEMAN, Counterclaimant Brett stated the following: 'Before we go inside we would like to make a few things clear. We want you to be aware that we object to this whole thing and we consider your actions today as an effective arrest, against our will, and under duress, because of your threat, that if we did not appear we would be arrested.' Soon after, Counterclaimants were taken into custody without being informed of any charges or other significant information.

9.  As a consequence of Conspirators' actions, during custody, Counterclaimants were subjected to mental and physical abuse by, for example, forced interrogatories, being kept in excessively-tightened handcuffs which caused pain, and with no apparent way to contact anyone if a medical emergency were to occur.

10.  Further, Counterclaimants were forced to give up personal information and property, such as biometric data (e.g. fingerprints), against their will.

11.  Counterclaimants, on information and belief, allege that each Conspirator exceeeded his jurisdiction, and by either directly, through an agent, or in concert with another, caused Counterclaimants, under color of law, to be unlawfully and forcibly detained against their will.

12.  At the outset of the detention, Conspirators, without good cause, threatened Counterclaimants with forced incarceration if

5

Counterclaimants did not appear at the Marshal's office. Counterclaimants were thus in custody for over six hours. Further, although each Conspirator, at no risk to himself, was in a position to prevent said injury to counterclaimants, none made any effort to prevent injury.

13. Counterclaimants, on information and belief, allege that each Conspirator, knowingly and willfully, acted to deprive Counterclaimants of their liberty, and each Conspirator failed to act to prevent Counterclaimants' loss of liberty. Further, each Conspirator continues to be a willing participant in concert with each of the remaining Conspirators for purposes of keeping Counterclaimants under constructive custody.

14. Until jurisdiction is provent, all proceedings in the original case must stop until adjudication of jurisdiction which is the subject of this counterclaim.

15. Conspirators have a duty to not cause Counterclaimants' loss of liberty.

16. Conspirators have breached that duty.

17. The damages for the injury caused by Conspirators' actions are $76,000 for each act of each Conspirator.

18. The damages for the injury caused by Conspirators' absence of required action is $5,000 for each failure to act.

Defendants' Counterclaim prays for general damages of $76,000 against each Counterdefendant; for special damages of $350,000 for the alleged unlawful deprivation of liberty; for dismissal of the criminal action; for declaratory judgment that Counterdefendants acted arbitrarily and capriciously, in abuse of discretion and not in accordance with law, but under color of law, that Counterdefendants have acted in excess of their

6

constitutional limits, and that Counterdefendants' actions were in excess of statutory jurisdiction, authority and statutory right.

Defendants rely on the definitions of a writ of error coram nobis and file set forth in Bouvier's Law Dictionary, 12th Ed. (1868), in contending that the court has authority to issue the writ to correct the docket as asserted by Defendants. Black's Law Dictionary, 6th Ed. defines "error coram nobis":

> Error committed in the proceedings 'before us', *i.e.*, error assigned as a ground for reviewing, modifying, or vacating a judgment in the same court in which it was rendered. A writ to bring before the court that pronounced judgment errors in matters of fact which had not been put in issue or passed on and were material to validity and regularity of legal proceeding itself.

In *Carlisle v. United States*, 517 U.S. 416, 429 (1996), the Supreme Court explained that the writ of error coram nobis is "traditionally available only to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict." In *United States v. Riedl*, 496 F.3d 1003, 1005-1006 (9th Cir.2007), *cert. denied*, 552 U.S. 1188 (2008), the Ninth Circuit ruled:

> Both the Supreme Court and we have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable. In *United States v. Morgan*, 346 U.S. 502, 511 ... (1954), the Court characterized the writ as an 'extraordinary remedy' that should be granted 'only under

>circumstances compelling such action to achieve justice.' *See also Carlisle v. United States*, 517 U.S. 416, 429 ... (1996)('"[I]t is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate."') ... Similarly, we have described the writ as 'extraordinary,' ... 'used only to review errors of the most fundamental character,' ... and 'fill[ing] a very precise gap in federal criminal procedure.

Defendants cite no authority and the Court has found none allowing a writ of error coram nobis to correct alleged docketing errors in an ongoing criminal prosecution.  To the extent Defendants seek a writ of error coram nobis, Defendants' motion is DENIED.

To the extent Defendants seek to file in this criminal action their "Counterclaim for Trespass," Defendants' motion is DENIED.  The Clerk of the Court will be directed to lodge in this criminal action the "Counterclaim for Trespass" solely to establish in the record that Defendants attempted to file it.  However, Defendants cannot bring a civil counterclaim for damages and declaratory relief in a criminal action.  The applicable federal law and the Federal Rules of Criminal Procedure do not allow criminal defendants to file civil counterclaims in criminal cases.  *See United States v. Edmiston*, 2008 WL 269538 at *4 (E.D.Tenn., Jan. 29, 2008); *Jackson v. City of Paterson*, 2006 WL 2465314 at * 2, n.1 (D.N.J., Aug. 22, 2006).  If Defendants intend to proceed with the claims alleged in their Counterclaim,

they must file a separate civil action.[1]

For this reason, Defendants' "Notice of Automatic Stay" based on the filing of their Counterclaim is invalid and is **VACATED**. Defendants cite no authority and the Court can find none permitting the stay of a criminal prosecution because of the filing of a civil action. Once Defendants are arraigned in this criminal action, Defendants, through their retained or appointed counsel or by themselves acting *in pro per*, should Defendants elect their constitutional right of self-representation, may, in accordance with the Federal Rules of Criminal Procedure and the Local Rules of Practice for the Eastern District of California, file any appropriate pre-trial motions, which motions will be noticed for hearing, briefed, argued and resolved by the Court.

For the reasons stated:

1.  Defendants' "Notice of Automatic Stay" is **VACATED**;

2.  Defendants' Ex Parte Motion for Expedited Writ of Error is **DENIED**;

3.  The Clerk of the Court is directed to lodge as of November 12, 2010 Defendants' "Counterclaim for Trespass."

IT IS SO ORDERED.

Dated:   December 7, 2010              /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE

---

[1] No opinion is expressed as to the merits of any such civil action or its impact on this criminal prosecution.